

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 12, 2023

**BY ECF**

The Honorable Jesse M. Furman
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: *United States v. Edward Alvarado Segura*, 22 Cr. 552 (JMF)

Dear Judge Furman:

    The Government respectfully submits this letter in advance of the October 18, 2023 sentencing of the defendant Edward Alvarado Segura, on his conviction for conspiring to distribute fentanyl. For the reasons set forth below, the Government respectfully submits that a significant term of imprisonment below the Stipulated Guidelines Range of 108 to 135 months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing.

**I. Offense Conduct**

    The defendant is part of a drug trafficking organization (the "DTO") that, from at least in or about June 2020 through at least on or about October 19, 2022, used the United States Postal Service ("USPS") to ship multi-kilogram quantities of fentanyl, among other drugs, from California to the Bronx, where the defendant lived with his brother and co-defendant, Edwin Alvarado Segura, and to Manhattan. (PSR ¶ 9). Law enforcement agents identified approximately 60 packages consistent with the DTO's distribution patterns (PSR ¶ 11), and seized approximately 10 of those packages, which were found to contain approximately 11.8 kilograms of powder fentanyl, 1 kilogram of heroin, and 6 kilograms of cocaine, as well as 6.8 kilograms of fentanyl pills seized by law enforcement agents directly from the defendant's co-defendant, Jordany Cruz. Extrapolating from the narcotics seized to the total number of packages identified in this investigation, the Government believes that the DTO is responsible for shipping with the intent to distribute at least approximately 127 kilograms of powder fentanyl, 6.8 kilograms of pills containing fentanyl, 9 kilograms of heroin, and 6 kilograms of cocaine. (PSR ¶ 12).

    The defendant was linked to the conspiracy first through his brother, Edwin Alvarado Segura, whose apartment IP address, where the defendant also lived, and phone number was used to track packages that law enforcement seized that contained multiple kilograms of fentanyl. (PSR ¶ 16, 18). Law enforcement saw the defendant on surveillance video picking up suspected narcotics packages, as well as in the presence of his co-conspirator Adony Estrella hanging out at

one of the packages delivery locations the day of a suspected narcotics package delivery to that address. (PSR ¶¶ 18, 19). Finally, evidence from the defendant's brother's iCloud account showed that the defendant and Edwin Alvarado Segura exchanged voice notes about narcotics trafficking, including one discussing having a customer "sample it" before they "talk about price." (PSR ¶ 18).

The defendant first appears to have become involved in the conspiracy in or about October 2021. Accordingly, based on the quantities of fentanyl seized by law enforcement form that date onwards, as well as the extrapolation discussed above, the defendant is being held responsible for conspiring with his co-defendants to distribute approximately 25 kilograms of fentanyl and 6 kilograms of cocaine. The defendant's role, while placing him as a participant in large quantity narcotics trafficking, is below that of his brother and co-defendant, Edwin Andres Alvarado Segura. The defendant's role appears limited to receiving and delivering packages of fentanyl and cocaine and assisting his brother in running the distribution of these packages of fentanyl and cocaine in the Bronx and Manhattan. The defendant appears to be equally culpable to Estrella and co-defendant Jordany Cruz, but less culpable than co-defendant Freddy Espinal, who appears on par with Edward Alvarado Segura and Pedro Ornelas, who shipped fentanyl.

## II. Guilty Plea and Applicable Guidelines Range

On November 17, 2022, the defendant was charged in a one-count Information for conspiring to distribute and possess with intent to distribute, in violation of Title 21, United States Code, Section 846, 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A). The defendant was arrested on November 29, 2022. (PSR ¶ 24).

On May 31, 2023, Edward Alvarado Segura pled guilty, pursuant to a plea agreement (the "Plea Agreement") to Count One. (*Id.* ¶ 4). The Plea Agreement between the parties stipulated to a base offense level of 36, as the offense involved at least 30,000 kilograms but less than 90,000 kilograms of converted drug weight for narcotics. (*Id.* ¶ 5(A)). Factoring in a reduction because the defendant appeared to meet the safety valve criteria in U.S.S.G. § 2D1.1(b)(18), and acceptance points, the total offense level is 31. (*Id.* ¶ 5(A)). With a criminal history category of I, the Stipulated Guidelines Range is 108 to 135 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment, absent relief from the safety valve. (*Id.* ¶ 5(B-C)). The parties agreed that neither a downward nor an upward departure from the Stipulated Guidelines range was warranted. (*Id.* ¶ 5(C)). The defendant was remanded following his guilty plea.

The Probation Department calculated the same offense level of 31, criminal history category of I, and resulting in a Guidelines range of 108 to 135 months' imprisonment. (*Id.* ¶¶ 39, 43, 82). The Probation Department recommends a downward variance of 85 months' imprisonment to be followed by three years of supervised release. (*Id.* at 23).

## III. Discussion

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. The Guidelines are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established [in the Guidelines];
(5) any pertinent policy statement [issued by the Sentencing Commission];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### B. The Court Should Impose a Significant Term of Imprisonment Below the Stipulated Guidelines Range

The Government respectfully submits that a significant term of imprisonment below the Stipulated Guidelines range of 108 to 135 months' imprisonment would be sufficient, but not greater than necessary, to reflect the nature and seriousness of the offense; promote respect for the law; provide just punishment for the offense; and afford adequate deterrence to criminal conduct, as required by 18 U.S.C. § 3553(a).

To start, the Government notes that, if the proposed Guidelines Amendment to 4C1.1 goes into effect next month, the defendant will be eligible for an additional two-level decrease in his offense level. Accordingly, to avoid arbitrariness from his sentencing date, the Government submits that the Court should vary the defendant's sentencing range two levels downward, to an adjusted Guidelines range of 87-108 months.

The seriousness of Edward Alvarado Segura's conduct supports a substantial term of imprisonment. As the Court is aware, fentanyl is a particularly dangerous substance, where even small amounts can prove to be fatal. Indeed, according to the Centers for Disease Control and Prevention (the "CDC"), out of over 107,000 deaths from drug overdoses in 2022, it is estimated that 80,590 of these deaths, or 75%, involved at least one opioid, with 71,450, or 66.5%, involving synthetic opioids, primarily from fentanyl or fentanyl analogs. *See* CDC, Fighting Fentanyl: The Federal Response to a Growing Crisis, July 26, 2022 (statement of Christopher M. Jones, Acting Director of National Center for Injury Prevention and Control, CDC), *available at* https://www.cdc.gov/washington/testimony/2022/t20220726.htm#:~:text=Together%20we%20can%20stop%20drug,months%20ending%20in%20January%202022.

As described above, Alvarado Segura conspired to distribute at least 25 kilograms of fentanyl and 6 kilograms of cocaine. Thus, there is little question that the offense and narcotics involved in this case were extremely serious. A substantial term of imprisonment would adequately reflect the gravity of the defendant's conduct.

Moreover, the defendant and his co-conspirators occupied a crucial role in the narcotics conspiracy and distribution chain. In order for narcotics to be sold throughout the United States, they need to be successfully moved. The defendant provided this link in the narcotics distribution chain by picking up wholesale quantities of fentanyl and distributing them to traffickers based in the New York City area who could redistribute the drugs and sow this poison in our community. A significant sentence is warranted here based on the nature of the offense and the need to adequately deter both the defendant from engaging in such conduct in the future and other individuals who may be considering similar involvement in narcotics distribution.

While the defendant's conduct was very serious, the Government acknowledges the mitigating factors in this case set forth in additional detail in the PSR and defense submission: The defendant's lack of prior criminal history; his mental and physical health issues; the conditions of his post-plea confinement; and his more limited role relative to his older brother, with whom he shared an apartment. Moreover, based on the Government's investigation, it appears that none of the charged defendants were the owners of the narcotics trafficked—they all sat in a mid-level

distribution role in the fentanyl supply chain, and they did not reap the majority of the financial benefits tied to this distribution. Accordingly, it is fair for the Court to consider those circumstances and the Government agrees that a below-Guidelines sentence is appropriate to justly punish the defendant, while still achieving the stated objectives under Section 3553(a).

### C. Conclusion

For the reasons set forth above, a significant term of imprisonment below the Stipulated Guidelines Range of 108 to 135 months' imprisonment would be sufficient but not greater than necessary in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _/s/_____
Kaylan Lasky
Edward C. Robinson, Jr.
Matthew R. Shahabian
Assistant United States Attorneys
(212) 637-2315/-2273/-1046